IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 2, 2001

## STATE OF TENNESSEE v. RONALD DOTSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-12261      Joseph B. Dailey, Judge**

---

**No. W2000-03115-CCA-R3-CD  - Filed December 28, 2001**

---

A Shelby County jury convicted the Defendant of aggravated robbery, and the trial court sentenced him as a repeat violent offender to life imprisonment. In this appeal as of right, the Defendant argues (1) that insufficient evidence of his identity as the perpetrator was presented at trial and (2) that there was a material variance between the indictment and the proof at trial. Having reviewed the record, we conclude (1) that sufficient evidence was presented to support the Defendant's conviction and (2) that a variance between the indictment and the proof at trial existed, but that the variance did not affect the substantial rights of the Defendant and thus was not fatal. We therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

AC Wharton, Jr., Public Defender, and W. Mark Ward, Assistant Public Defender, Memphis, Tennessee (on appeal); and Lawrence White, Memphis, Tennessee (at trial), for the Appellant, Ronald Dotson.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney General; William L. Gibbons, District Attorney General; and Amy Weirich, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

In September 1999, the Shelby County Grand Jury indicted the Defendant, Ronald Dotson, for one count of aggravated robbery. Following a trial conducted in August 2000, a Shelby County jury found the Defendant guilty of the offense charged. The trial court sentenced the Defendant as a repeat violent offender to life imprisonment. In this appeal as of right, the Defendant raises two issues for our review: (1) whether sufficient evidence of his identity as the perpetrator was presented at trial to support his conviction; and (2) whether there was a material variance between the indictment and the proof presented at trial. We affirm the judgment of the trial court.

Larry Spence, the victim in this case, was working at Joe's Liquor Store in Memphis on June 20, 1998. Spence testified at trial that after his co-worker left the store for lunch that day, leaving him alone, a man entered the store. According to Spence, the man said, "I need your job." Spence, who testified that he thought the man was referring to the hot weather and "assumed he was talking about being in a cool place," did not respond. Spence reported that after the man made the comment, the man stepped up to the counter, approximately three to four feet from where Spence stood; "pulled a pistol"; and ordered Spence to "give him the money." Spence recalled that the gun was a black, automatic weapon, and he stated that he was afraid. Spence testified that he handed the man approximately $600, and the man left. Spence then called the police to report the crime. He described the man who had robbed him as "a white male, forty to forty-five years old." He also told police that the man was unkempt and that he was wearing jeans and a light blue t-shirt.

A few days later, on June 25, 1998, Spence accompanied police officers to the police department to view photographs of possible suspects. He viewed a photograph lineup and identified one of the men in the lineup as the perpetrator. Spence then went home. Later that evening, however, Spence returned to the police department at the request of the police. The man whom Spence had identified was present at the police department when Spence arrived. Officers told Spence to "look at this man and make sure that that was who robbed" him. Spence and an officer entered an office where the man was waiting, and Spence saw the man and heard him speak. Based on this encounter, Spence determined that he had mistakenly identified the wrong person. He reported that when he left the police department on the evening of June 25, 1998, he was "certain" that he had made a mistake. Spence also testified that while he was at the police department on June 25, 1998, he learned that the man whom he had identified had an alibi.

On September 4, 1998, officers transported Spence to the police department a third time. Spence was again shown a photograph lineup of possible suspects. On this occasion, he identified the Defendant as the man who robbed him. Spence again identified the Defendant in court as the perpetrator of the crime.

On cross-examination, defense counsel pointed out that the Defendant has several tattoos on his arms. Counsel then asked Spence why he did not mention the tattoos to police when he described the man who robbed him. Spence responded, "I simply did not notice the tatoos [sic]." On redirect, Spence stated that he was paying attention to the pistol during the robbery. He testified that if he had noticed the tattoos, he would have told the police about them.

Lieutenant Michael Jeffery Clark of the Memphis Police Department testified that he became acquainted with Spence while patrolling the area where the Joe's Liquor Store is located, but stated he and Spence did not know one another well. Clark testified that on June 25, 1998, he showed Spence several photographs of possible suspects. He reported that Spence identified a man named John Profitt as the robber. Hours after the identification was made, officers arrested Profitt and transported him to the police department. Profitt told police that he had an alibi, and police began to investigate. Clark testified, "From both interviewing Mr. Spence, and then interviewing Mr.

Profitt, and then interviewing the alibi witnesses that Mr. Profitt . . . provided, I began to believe . . . that Mr. Profitt was not responsible for the robbery- at least that possibility existed."

Clark then called the liquor store to find out if Spence was working, but he was not at work. Someone at the liquor store told Clark that Spence did not have a phone in his home and gave Clark Spence's address. Clark and another officer therefore went to Spence's home to ask him if he would be willing to return to the police department. Clark maintained that before he was able to ask Spence to accompany the officers to the police department, Spence said, "Look, I want to tell you something. I've been thinking about this I.D., and I'm not as sure as I was . . . when I made it . . . ."

Clark testified that when they arrived at the police department, Clark took Spence into an office where John Profitt was waiting. Prior to entering the room, Clark told Spence that he "wanted to get the suspect's reaction" when he saw Spence. Clark reported that he told Spence that he planned to enter the room in which Profitt was waiting and leave the door open so that Spence could stand in the door. He told Spence not to say anything and that he would speak to Profitt so that Spence could hear Profitt's voice. He also told Spence that if Profitt asked who he was, he planned to tell Profitt that Spence was "just another detective." Clark testified that when he and Spence entered the room, he saw "no surprise at all in [Profitt's] eyes, his voice." He stated, "It didn't appear to me that [Profitt] gave any indication, whatsoever, that he'd ever seen Mr. Spence before." Clark testified that after speaking with Profitt for approximately a minute, he left the room and closed the door. Clark recalled that Spence then immediately said, "That is not him."

On cross-examination, Clark admitted that he did not follow standard police procedure when he took Spence into the office in which Profitt was waiting. However, he maintained that prior to allowing Spence to see Profitt "face to face," he did not reveal to Spence that Profitt had an alibi, and he did not let Spence know that he had reservations about the Spence's identification of Profitt as the man who robbed him. Clark emphasized, "I would never want to influence Mr. Spencer [sic] or any other witness to either make an identification or not to make an identification or change their mind." He explained,

> I had a strong . . . personal feeling . . . that this person that I had under arrest and detained in my office did not commit this robbery. I felt like it was just as much my duty to clear him of the charge if he was not guilty as it was to find evidence to charge him on. My feelings were strong enough to where I broke what would normally be procedure to do that.

Lieutenant Joe Scott of the Memphis Police Department testified that he was working in the robbery bureau at the time of the crime in this case. He stated that he conducted the second photographic lineup on September 4, 1998. Scott reported that on September 4, 1998, Spence identified the Defendant as the man who robbed him. He testified that he did not provide any information about the Defendant to Spence during the identification procedure; he stated that he had no conversation with Spence other than that necessary to conduct the identification procedure. Scott also reported that a photograph of the Defendant was not included in the first photographic lineup conducted on June 25, 1998.

Sergeant Michael Williams of the Memphis Police Department testified that he acted as the case manager for this case. He reported that he and other officers arrested the Defendant in Wynne, Arkansas and transported him back to Memphis. Williams testified that after being advised of his rights, the Defendant gave a statement to police. Williams stated that none of the officers present when the Defendant provided the statement coerced the Defendant, threatened the Defendant, or made any promises to the Defendant in order to obtain the statement. An audio tape of the Defendant's statement was played for the jury, and a transcript of the statement was entered into evidence. In his statement to police, dated September 3, 1998, the Defendant confessed to the robbery of Joe's Liquor Store. He stated, "I just went in and asked the man to give me all his money and he gave it to me and I left." The Defendant reported that during the robbery, he was armed with "a BB gun" that looked like a .357 revolver.

## I. SUFFICIENCY OF IDENTIFICATION EVIDENCE

The Defendant first argues that insufficient evidence was presented to support his conviction for aggravated robbery. Specifically, he contends that sufficient evidence of his identity as the perpetrator was not presented to the jury. He states, "Appellant's conviction was based solely upon one eyewitness identification and his alleged confession."

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

We find the evidence of the Defendant's identity as the robber sufficient to support his conviction. An identification by the victim that the defendant was the perpetrator of the offense is sufficient evidence by itself to establish identity. State v. Strickland, 885 S.W.2d 85, 87 (Tenn.

Crim. App. 1993). Here, not only did the victim identify the Defendant as the perpetrator in a photographic lineup prior to trial and a second time at trial, but the Defendant's confession to the crime was also entered into evidence at trial. This is clearly sufficient evidence to support the jury's finding of guilt. This issue is without merit.

## II. INDICTMENT

The Defendant next contends that his conviction should be reversed because of a material variance between the indictment charging him with aggravated robbery and the proof presented at trial. The indictment alleges that the Defendant

on June 20, 1998, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully, knowingly, and violently, by use of a deadly weapon, to wit: a pistol, obtain from the person of Larry Spence, a sum of money, all over the value of five hundred dollars but under the value of one thousand dollars of the proper goods and chattels of Larry Spence, in violation of T.C.A. 39-13-402, against the peace and dignity of the State of Tennessee.

Aggravated robbery is defined, in pertinent part, as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear," Tenn. Code Ann. § 39-13-401(a), "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Id. § 39-13-402(a)(1). The Defendant argues that the proof at trial established that the Defendant committed the robbery by putting the victim in fear, but not that the crime was committed "violently," as alleged in the indictment. The Defendant argues that this variance between the indictment and the proof is sufficiently material and prejudicial to require us to overturn his conviction.

The United States and Tennessee Constitutions require that a charging instrument, such as an indictment, inform the accused of "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9. The form of an indictment is also prescribed by statute in our state. See Tenn. Code Ann. § 40-13-202. Our supreme court has announced that

an indictment is sufficient to satisfy the constitutional guarantees of notice to the accused if the indictment contains allegations that (1) enable the accused to know the accusation to which answer is required; (2) furnish the trial court an adequate basis for entry of a proper judgment; and (3) protect the accused from a subsequent prosecution for the same offense.

State v. Hammonds, 30 S.W.3d 294, 299 (Tenn. 2000) (citing State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997)).

When there is a variance between the indictment and the proof offered at trial, the variance is fatal if "it affects the substantial rights of the defendant." State v. Mayes, 854 S.W.2d 638, 639-40 (Tenn. 1993) (citing Berger v. United States, 295 U.S. 78, 82 (1935)). "The variance is not to be regarded as material when the indictment and proof substantially correspond." Id. at 640 (citing Berger, 295 U.S. at 82-84). Our supreme court has adopted the following test for determining whether the variance between an indictment and the proof at trial is material:

Unless substantial rights of the defendant are affected by a variance, he has suffered no harm, and a variance does not prejudice the defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, and (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense; all other variances must be considered to be harmless error.

Id. at 640 (quoting State v. Moss, 662 S.W.2d 590, 592 (Tenn.1984)). The Tennessee Supreme Court has emphasized that it has "'moved away from the strict pleading requirements of common law,'" Hammonds, 30 S.W.3d at 299-300 (quoting State v. Barney, 986 S.W.2d 545, 546 (Tenn. 1999)), and has expressed "reluctance to elevate form over substance when evaluating the sufficiency of indictments." Id. at 300. The Tennessee Supreme Court has thus concluded that "indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." Id.

It appears that violence was not used in this case to accomplish the robbery. The Tennessee Supreme Court has defined the term "violence" as used in the offense of robbery as "physical force that is unlawfully exercised or exerted so as to injure, damage or abuse." State v. Fitz, 19 S.W.3d 213, 215 (Tenn. 2000). The victim in this case testified that the Defendant approached him; stopped approximately three to four feet from him, on the opposite side of the store counter; "pulled a pistol"; and ordered Spence to give him money. The Defendant apparently did not exert any "physical force," id., to accomplish the robbery, and thus, the Defendant did not act "violently" as alleged in the indictment. See State v. Walter Lee Allen, No. 03C01-9807-CC-00257, 2000 WL 276840, at *1, *3 (Tenn. Crim. App., Knoxville, Mar. 15, 2000), perm. app. granted (Tenn. Oct. 30, 2000).[1] We therefore conclude that a variance between the indictment and the proof exists in this case, and our determination of this issue turns upon the question of whether that variance was fatal.

We conclude that there has been no showing that the substantial rights of the Defendant were prejudiced by the variance between the indictment and the proof at trial. The indictment sufficiently informed the Defendant that he was being charged with aggravated robbery. The Defendant makes no allegation that he was in any way surprised by the proof at trial. In fact, in his confession to police, the Defendant described the robbery in the same manner as did the victim at trial. There is no allegation that the Defendant was misled by the variance or that he was in any way unable to

---

[1] We note that in a recent case, a panel of this Court (with a concurrence in results only by one member of the panel) determined that a defendant accomplished a robbery of a convenience store by violence when he "point[ed] a gun at a clerk and order[ed] her to move from one area of [the] store to another" area of the store which had no windows. State v. Gary L. Haney, No. E1999-00552-CCA-R3-CD, 2000 WL 555002, at *7 (Tenn. Crim. App., Knoxville, May 8, 2000). The Court emphasized that its decision was based solely upon the "unique facts of [the] case." Id. at *6. Nevertheless, a separate panel of this Court reached a different conclusion in the case involving defendant Haney's co-defendant. See Walter Lee Allen, 2000 WL 276840, at *3. In Allen, this Court concluded that the evidence failed to demonstrate that the co-defendant acted violently during the robbery of the convenience store because the co-defendant merely "stood silently in the doorway" during the crime. See id. at *1, *3. The Court pointed out that the store clerk "testified that Mr. Allen never said a word to her, never threatened her in any way, and never touched her." Id. at *1.

prepare his defense as a result of the variance. The Defendant's primary defense was identity, not a defense hinging upon whether he acted violently in committing the crime. Furthermore, the variance does not put the Defendant at risk of being prosecuted a second time for the same offense. The indictment specifically charges the Defendant with robbing Larry Spence at gunpoint on June 20, 1998. Based upon these facts, we conclude that the variance is not fatal.

Accordingly, we AFFIRM the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE